### CHITTOCK, In re.

Probate Court, Lake County.

No. 412. Decided February 20, 1952.

Oliver Bates, Madison, for guardian.
Dan C. Miller, Cleveland, for trustee.

## OPINION

By POLLOCK, J.

This matter comes before this court on exceptions filed on December 11, 1951, to certain items of the supplemental inventory. The will of Richard D. Chittock established a testamentary trust for the benefit of his wife Effie Chittock during her life and disposing of the balance at her death to named beneficiaries. Soon after his death a guardian was appointed for her personally and to manage her separate estate. The trustee under the will has also been duly appointed. The executor in his supplementary inventory listed a saving account in the Painesville office of The Cleveland Trust Company in the sum of $3,760.69 in the name of "R. D. Chittock Effie Chittock (Mrs. R. D.) Either may draw." There was no conjunction or punctuation between the names. Both parties signed the signature card of the bank under the words on the card "I hereby assent to the Regulations of The Cleveland Trust Company governing Savings Accounts." The guardian for Mrs. Chittock excepts to the inclusion of this entire account in the inventory, but in the brief filed by her attorney, he concedes that one-half should be included in the inventory.

The trustee under decedent's will also excepts because certain United States Savings Bonds, Series E and G having a total maturity value of $11,000.00 dated from November, 1941 to June, 1947, issued in the names of Richard D. Chittock or Mrs. Effie Chittock were not included in the inventory. Attorneys for the respective parties filed a stipulation at the hearing which recites in part that:

"Third: The money used for the purchase of the said Government Bonds was from joint earnings of the said Richard D. Chittock and his wife, Effie Chittock."

The United States Treasury Department Regulations governing United States Savings Bonds, sixth revision dated February 13, 1945, Department circular No. 530, being the regulation now in effect, issued under the authority contained in R. S. 161, sec. 22, as added by sec. 6, 49 Stat. 21, sec. 8(d), 50 Stat. 482; 5 U. S. C. 22, 31 U. S. C., Sup. 757 C, 738 a, provides with respect to the payment or reissue after the death of one co-owner that:

"Section 315.45 (c). If either co-owner dies without the bond having been presented and surrendered for payment or authorized reissue, the surviving co-owner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor, * * *."

Subpart N—Deceased Owners likewise bears upon the title

to co-owner bonds and reads as follows:

"Section 315.47. Payment or reissue on death of owner. Upon the death of the owner of a savings bond who was not survived by a co-owner or designated beneficiary and who had not during his lifetime presented and surrendered the bond to a Federal Reserve Bank or to the Treasury Department for an authorized reissue, the bond will be considered as belonging to his estate and will be paid or reissued accordingly, as hereinafter provided, except that reissue under the provisions of this Subpart will not be made to a creditor. * * *"

The provision contained in Department Circular No. 530, 3rd Revision of March 27, 1940, is as follows:

"315.11 Co-owners (a) Payment or reissue. * * * (2) After the Treasury Department has received notice of the death of one co-owner who had not requested payment and presented the bond for payment to a Federal Reserve Bank or the Treasury Department prior to his death, a bond so registered will be paid only to the surviving co-owner upon his request. * * *"

Quite a complete history of the Federal legislation and of Treasury regulations promulgated thereunder is found in the case of **In re Estate of Di Santo, 142 Oh St, 223, 27 O. O. 179,** at **page 180** of Ohio Opinions. That was a survivorship case while this is a co-owner case and therefore the regulations as to payment or reissue are different but the history of the legislation is pertinent.

The vital issue in the determination of the question of ownership of these bonds is whether or not the purchase of the bonds by a citizen constitutes a contract with the government.

The courts seem to be in disagreement. In the case of **Foraker, Exr. v. Kocks, Admr., 41 Oh Ap, 210,** there was a joint bank account and United States Liberty bonds owned as co-owners. The Court of Appeals for Perry County held on November 27, 1931 as follows:

"Syl. 1. Joint tenancy with incidental right of survivorship does not exist in Ohio.

"Syl. 2. Notwithstanding nonexistence of joint tenancy with right of survivorship, parties may contract for joint ownership with such right.

"Syl. 3. If joint tenancy is expressed without words of survivorship, it will be considered as tenancy in common.

"Syl. 4. Although joint tenancy is expressed, survivorship is not presumed.

"Syl. 5. Where certificate of deposit and Liberty Bond were made payable to husband and wife or either without men-

tioning survivorship, no right of survivorship existed under circumstances.

"Syl. 7. Where certificate of deposit and United States Liberty bond were payable to husband and wife, or either, presumption existed that property was impressed with contract of ownership, wherein husband and wife had equal rights, without any survivorship.

"Syl. 8. As regards rights of representative of wife predeceasing husband, evidence established that moneys by which certificate of deposit and Liberty bond were obtained were joint savings of husband and wife.

"Syl. 9. That United States Treasury recognized survivor as proper party to whom transfer of Liberty bond should be made held not to confer title in Liberty bond or create contract of survivorship therein."

The above rule was adopted in the case of Gladieux v. Parney, No. 4558, Sixth Appellate District, Lucas County, referred to in the Ohio Law Reporter of December 24, 1951 at pg. 71 but not reported in full. The court secured a copy of the opinion from which he quotes the following:

"The right of survivorship has its foundation in the contractual relationships of the parties. **Foraker, Exr. v. Kocks. Admr., 41 Oh Ap, 210,** et seq., is expressive of the principles which correctly apply to the instant case. That case recognizes that joint tenancy with individual right of survivorship does not exist in Ohio; 'that nevertheless parties may contract for joint ownership,' and that even though joint tenancy exists, survivorship is not presumed. It therefore follows that before a deposit or other property can be accepted as possessing the survivorship aspects, such survivorship right must be the product of definite contract. The intention to create the survivorship right must be made manifest either by the method employed in designating the account, appropriate notation or declarations, comprehensive enough in character to make clear the intention of the parties.

"In **The Cleveland Trust Co., et al. v. Scobie, Admr., 114 Oh St, 241,** et seq., and all of the later cases, wherein the law as stated in the Scobie case has been followed, it is to be observed that the word "survivor" has been used or a contract or declaration has existed with respect to the deposit or other asset involved. Therein we find the difference between the instant case and such other authorities.

"The most liberal application of the doctrine of judicial notice is not of sufficient force to require a court to take notice of the vast number of Federal and State regulations, infinite in variety and subject to frequent amendment. Therefore, in

the absence of proof as to the regulations, indicating the conditions of issuance, transfer and payment of the bonds of this particular series, the foregoing conclusions apply with equal force to the fifteen series E bonds. Upon proof that such regulations provide for the creation of a contract of survivorship between the owners of such bonds and that the owners acquired the bonds with knowledge of and intent to create as between themselves a survivorship agreement pursuant to such regulations, the right of survivor to the proceeds of the bonds would be sufficiently established. In the absence of such proof, the right of survivorship does not exist. This for the reason that a contract of survivorship is not, as a matter of law, presumed. (**Foraker, Exr. v. Kock's Admr., 41 Oh Ap, 210,** et seq.)"

The conclusion reached in the last paragraph of the above quotation appears to be in direct conflict with the conclusion reached, not only by Judge Norris whom they reversed but by his predecessor and by Judge McClelland of Franklin County Probate Court.

In the case of **In re Estate of Glen C. Taylor, 27 O. O. 434,** decided by Probate Judge Chittenden of Lucas County, December 18, 1943, the second syllabus reads as follows:

"Where United States Savings Bonds are payable to one person OR to another person, such persons are co-owners, and upon the death of one, the bonds belong to the survivor or to his estate in case of his death."

In the case of In re Estate of Inez L. Pennell decided by Judge C. P. McClelland, Probate Judge of Franklin County on February 28, 1944, being case No. 107326 in that court, which opinion was not published we have a case of co-ownership. His decision reads in part as follows:

"It is quite obvious that under the statute as hereinbefore quoted and the regulations made in pursuance thereof, such bonds as issued constitute a contract between the government and the contracting parties. In this case both of the owners were contracting parties with the government. According to the contract therefore, when Inez L. Pennell died the government recognized Mr. Pennell as the owner of the bonds. Mrs. Pennell contracted to that effect.

In the **Disanto case** reported in **142 Oh St,** at **page 223, 27 O. O. 179,** the Supreme Court took the same position, that is, that in a case in which a bond was issued under the above named act payable to one person or a named beneficiary, the bond constituted a contract between the parties.

Judge Chittenden of the Probate Court of Lucas County in the estate of Glen C. Taylor, reported in 27 O. O., page 434,

held that a bond issued to two co-owners is payable to the survivor upon the death of one of the co-owners. He simply decided that the bond was payable to the survivor but did not make any distinction between the right to payment and ownership. Inasmuch as he made no such distinction, I think it can be fair to be presumed that he meant that the survivor should be the owner of the bond or the proceeds thereof.

We therefore are compelled to come to the conclusion that William F. Pennell, the survivor of the two co-owners, is the owner of the bonds, and that the exceptions to the inventory should be sustained."

The basic question was passed on by the Supreme Court of Ohio in the case of In re Estate of DiSanto, 142 Oh St, 223, 27 O. O. 179 on November 17, 1943. In this case the ownership of series D United States savings bonds, issued pursuant to the Second Liberty Bond Act, as amended and supplemented to Louis DiSanto, payable on death to his widow or a named child was in issue. While the ownership provision is different than the instant case, the final determination is dependent on whether or not the purchase of a United States Savings Bond constitutes such a contract as to create a property right or whether it merely provides a method of payment for the convenience of the Treasury Department. If the latter view prevails, the law of Ohio as set forth in the Foraker case prevails and the court would have to inquire into the source of the funds and the intention of the parties. If the former prevails, evidence is not even admissible on the source of funds or intention of the parties, they are bound by their written contract with the government.

The majority of the Supreme Court concurred in Judge Turner's opinion which reads in part as follows:

"* * * In the instant case the United States of America entered into a contract with Louis DiSanto to repay the principal amount of the bond to him or in case of his death to the named beneficiary.

"It is the contention of appellant that the treasury regulations which are made a part of the bond contract are merely for the convenience of the treasury in order to facilitate payment and are not sufficient to pass title to the designated beneficiary upon the death of the registered owner. While we agree that one of the purposes of such provisions was to facilitate payment, we are definitely of the opinion that the terms of the contract between the government and the bondholder are sufficient to and do pass title to the named beneficiary upon the death of the registered holder. * * *

"That a bond is a contract needs no citation of authority.

That the terms of the contract will be enforced so long as the same are not illegal is also elementary. The terms of the treasury circulars are specifically made a part of the contract as if they were fully set out in the bond form. * * *"

This court, contrary to his own personal opinion considers the law as declared in the DiSanto case binding upon him and therefore holds accordingly. The exception of the trustee of decedent's estate is therefore overruled.

As to the joint bank account, a joint tenancy exists. No provision was made that the funds should be paid to the survivor and therefore the law as stated in the Foraker case governs. The funds having originally been joint funds remain such and one-half of the deposit should be included in the inventory of the decedent.